UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALLYN TODD NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-mc-00721-AGF |
| | ) |
| PJ CHEESE, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Allyn Nelson ("Nelson") registered with this Court a judgment he received in *Nelson v. PJ Cheese, Inc.*, No. 4:20-cv-242-JPB (N.D. Ga.) ("*Nelson I*"), and seeks to obtain funds to satisfy the judgment from an account of PJ Cheese, Inc. at Regions Bank, pursuant to a writ of execution. Defendant PJ Cheese, Inc. ("PJ Cheese") has moved to dismiss or strike the writ of execution, and requested that no payout occur until the Court rules on the motion to dismiss. Nelson has opposed the motions.

**Prior Proceedings**

On May 16, 2019, Nelson initiated an arbitration proceeding against his employer, PJ Cheese, under the Fair Labor Standards Act ("FLSA"). On October 20, 2020, the arbitrator awarded Nelson $164,264 on his FLSA claim: $5,198.48 for wages, $5,198.48 in liquidated damages under the FLSA, and $153,867.32 in attorney's fees and costs, together with pre- and post-judgment interest.

On October 22, 2020, Nelson filed an action for confirmation of the arbitration award in the Northern District of Georgia, pursuant to the Federal Arbitration Act. Nelson sought confirmation of the arbitration award, together with attorney's fees and costs associated with the confirmation action.  PJ Cheese in its answer agreed that the arbitration award should be confirmed, but objected only to the request for additional attorney's fees and costs incurred in connection with the confirmation proceeding.  (Doc. No. 1-1, at 2).  On June 17, 2021, the Court in the Northern District of Georgia issued an Order confirming the arbitration award.

Nelson provided the Court with an order from *Nelson I* confirming the arbitration award, (Doc. No. 1-1 "Arbitration Award Order"), and the judgment entered by the Georgia court.  (Doc. No. 1-2).  The Arbitration Award Order found no grounds for vacation or modification of the arbitration award and states: "As such, the arbitration award is **CONFIRMED**.  The Clerk is **DIRECTED** to enter judgment in favor of Petitioner in the amount of $164,264.28."  (Doc. No. 1-1) (emphasis in original).  The Arbitration Award Order went on to award Nelson $5,595 in costs and fees.  *Id*.  The Judgment entered in the case references that the Court granted the motion to confirm the arbitration award, however, it thereafter stated only: "**Ordered and Adjudged** that Petitioner is awarded $5,045.00 in attorney's fees plus $550 in costs."  *Nelson I*, No. 4:20-cv-242-JPB (June 17, 2021 N.D. Ga.) (Doc. No. 1-2).  This appears to be a clerical error in the Georgia court's judgment.

Nelson has not received any payment from PJ Cheese, and as such on August 4, 2021, he registered the judgment with this Court.[1]  He then moved for a writ of execution of garnishment upon the assets of PJ Cheese being held at Regions Bank ("Regions") within this district.  Regions deposited $177,682.68 in funds with the Court.[2]

PJ Cheese moved to dismiss this matter, (Doc. No. 12), and filed a motion requesting the Court order the clerk not to disburse the funds.  (Doc. No. 14).  In its motions, PJ Cheese raises a number of arguments as to why it believes Nelson is not entitled to the funds.  Relevant to this order, PJ Cheese argues that jurisdiction is not proper over it because it is not a citizen of Missouri and does no business in this state or because service was improper.  Further, PJ Cheese contends the writ of execution was deficient.  PJ Cheese also claims Nelson is not the true party in interest because he filed a Chapter 7 bankruptcy proceeding and did not disclose this cause of action.

Specifically, with respect to the bankruptcy, the record appears to reflect the following:  On July 12, 2018 Nelson filed a Chapter 7 bankruptcy proceeding.  (Doc. No. 20-1).  On August 24, 2018 there was a report of no distribution, and on October 29, 2018, an order of discharge was entered.   The debtor thereafter reopened the proceeding

---

[1]   The parties disagree about the amount of the judgment.  Nelson contends he is entitled to $177,663.57—which includes $164,264.28 awarded by the arbitrator, $5,595 in costs and fees awarded by the Georgia court, $7,804.29 in prejudgment interest and post judgment interest of $19.11.  PJ Cheese argues Nelson is only entitled to the costs and fees awarded by the Georgia court and post judgment interest.

[2]   Nelson filed a motion for contempt and sanctions against Regions before the funds were deposited.  (Doc. No. 10).  Nelson has since withdrawn the motion.  (Doc. No. 13).

to avoid a lien. *Id.* Nelson does not contest that he failed to disclose his FLSA claim to the bankruptcy court. Will Hancock, counsel for PJ Cheese, wrote to the trustee of Nelson's bankruptcy estate to inform him of the wage claim after Nelson initiated this garnishment proceeding. (Doc. No. 18-2). A portion of the wage claims that were the subject of the FLSA case are attributable to the prepetition period. As a result of the contact by Hancock, the trustee filed a motion to reopen the bankruptcy proceeding on October 18, 2021, and an Order reopening the bankruptcy case was issued on October 19, 2021. (Doc. No. 20). PJ Cheese was aware of Nelson's bankruptcy during the course of the FLSA arbitration but did not assert any challenges based on standing or estoppel.

## DISCUSSION

**Jurisdiction and Sufficiency of Writ**

PJ Cheese asserts that the Court lacks personal jurisdiction because PJ Cheese does not have sufficient contacts with Missouri. But the question of whether the Court has personal jurisdiction over PJ Cheese is not at issue. This is an action to enforce the judgment entered in *Nelson I*. "A judgment in an action for the recovery of money or property entered in any…district court…may be registered by filing a certified copy of the judgment in any other district…." 28 U.S.C. § 1963. *See also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3012 ("[F]ederal judgments may by statute be registered in other districts.").

4

PJ Cheese also challenges the sufficiency of the writ of execution.  PJ Cheese argues Nelson was required to comply with Missouri's garnishment procedures, but failed to properly follow these rules.  In particular, PJ Cheese contends the writ was inadequate because Nelson failed to: 1) "request the clerk of court issue a writ of garnishment stating the matter and things required to be state[d]" pursuant to Missouri Supreme Court Rule 90.02; 2) identify the garnishee in the writ of garnishment pursuant to Missouri Supreme Court Rule 90.03; and 3) serve a copy of the summons and writ of garnishment upon PJ Cheese within five days of service upon the garnishee pursuant to Missouri Supreme Court Rule 90.03.  Nelson argues that the state rules do not apply in federal court and that he did adequately serve PJ Cheese and Regions.

Pursuant to Federal Rule of Civil Procedure 69:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69.

However, federal courts have seldom required strict compliance with the procedural provisions of state statutes in enforcing judgments.  *See, e.g. Resol. Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) ("[A]pplying every jot and tittle of Illinois procedural law and applying every jot and tittle of federal procedural law are not the only alternatives.  We are dealing with *supplementary* proceedings; and while for some purposes, such as appealability, they are fruitfully analogized to regular civil

5

proceedings, the analogy becomes strained when procedure at the trial level is in issue. Proceedings to enforce judgments are meant to be swift, cheap, informal. We do not think the draftsmen of Rule 69 meant to put the judge into a procedural straitjacket, whether of state or federal origin.") (internal citation omitted); *Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 256 (2d Cir. 1963) (Finding procedure followed in garnishment proceeding "accords with the spirit of the Rules and seems to be a sufficiently close adherence to state procedures."); *Line Constr. Benefit Fund, a Health & Welfare Fund v. Lewis Equip. Servs., LLC*, No. 4:19-09011-MC-RK, 2020 WL 734475, at *2 (W.D. Mo. Feb. 13, 2020) (plaintiff "substantially complied" with Missouri's rules for garnishment when he served the garnishee through the mail rather than as directed in Missouri Supreme Court Rule 90.03(a)). Nelson need only substantially comply with Missouri's procedural rules.

PJ Cheese first argues Nelson failed to comply with Missouri Rule 90.02 by failing to request the writ of garnishment "state the matter and things required to be state[d]." (Doc. No. 12 at 9). Missouri Supreme Court Rule 90.02 requires the garnishor file a request stating:

> **(a)** That a judgment has been entered against the debtor and remains unsatisfied;
> **(b)** The judgment balance, as defined in section 408.040, RSMo, and the amount remaining unpaid;
> **(c)** That the garnishor knows or has good reason to believe that the garnishee is indebted to debtor, that the garnishee is obligated to make periodic payments to debtor, or that the garnishee has control or custody of property belonging to debtor;

6

> **(d)** The requested return date of the writ, which shall be either 30, 60, 90, 120, 150, or 180 days after the filing of the request for the writ or, alternatively, that a continuous wage garnishment is requested; and
> **(e)** Whether payments made by the garnishee shall be made to the court or to the attorney for the garnishor.

Mo. Sup. Ct. R. 90.02.

In Nelson's motion to Register Foreign Judgment, he recites the amount of the arbitration award confirmed by the court and the further amounts awarded in the judgment entered in his favor in the Northern District of Georgia. (Doc. No. 1. at ¶¶ 2,4). Copies of the orders and judgment were also attached. In Nelson's Notice of Execution, he identifies Regions Bank as the garnishee. (Doc. No. 2 at 1). In Nelson's proposed Writ of Execution, he states that "no portion of said sum has been paid," the requested return date of the writ, and that the payment should be made to the Court. (Doc. No. 2-2 at 2). As such, Nelson satisfied requirements (a), (b), (d), and (e). Although Nelson did not expressly state in any of his filings that he knows or has good reason to believe Regions is indebted to PJ Cheese, as required by Rule 90.02(c), the Interrogatories Directed to Garnishee stated that the garnishment was directed to any and all property of PJ Cheese, Inc., including a specific bank account at Regions in the name of PJ Cheese. (Doc. No. 2-3). Regions admitted in its answer to the interrogatories that it had in its possession or control property or money belonging to PJ Cheese in the amount Nelson sought to garnish. (Doc. No. 6). As such, the Court finds that Nelson substantially complied with Rule 90.02.

7

PJ Cheese next contends Nelson failed to comply with Rule 90.03 because he did not identify Regions as the garnishee in any writ of garnishment and failed to serve a copy of the summons to PJ Cheese within five days of notice of service upon Regions. Contrary to PJ Cheese's argument, Rule 90.03 does not to require Nelson to identify the garnishee in the writ of garnishment.[3]  Moreover, Nelson's Notice of Execution and

---

[3] Rule 90.03 states, in its entirety:

> **(a)** The garnishee shall be served with summons and the writ of garnishment by the sheriff.  If the sheriff fails to obtain service upon a request to do so, the garnishor may request the court to appoint a special process server.  The special process server shall have the same duties as the sheriff with respect to service of garnishments. In addition, service may be made upon an employee of the garnishee designated to receive service or upon the paying, disbursing, or auditing officer of the garnishee.  Return of service shall be made as provided in Rule 54.20.  The return date of the writ of garnishment, if applicable, shall be set forth in the summons.
> **(b)** Within five days of notice of service upon the garnishee, the garnishor shall serve a copy of the summons and writ on the judgment debtor by delivering it to the judgment debtor as provided in Rule 43.01(c) or by mailing the documents to the debtor's last known address.  Service by mail shall be complete upon mailing.  At the time of mailing, a certificate of service shall be filed with the court.  The certificate shall show the caption of the case, the name of the party served, the date and manner of service, the designation of the documents, and the signature of the serving party or attorney.
> **(c)** Within five days of service of the summons and writ upon the garnishee, the garnishee shall hand deliver or mail a copy of the summons and writ on the judgment debtor at debtor's last known address according to the garnishee's records.
> **(d)** All pleadings and papers subsequent to service of the summons and writ of garnishment shall be served as provided in Rule 43.01.

Mo. Sup. Ct. R. 90.03

Interrogatories to Garnishee attached thereto adequately identify Regions Bank as the garnishee. (Doc. Nos. 2 at 1 and 2-3).

PJ Cheese next claims Nelson failed to serve a copy of a summons or writ of garnishment upon it within five days of service on Regions. Rule 90.03 requires Nelson to "serve a copy of the summons and writ on the judgment debtor by delivering it to the judgment debtor as provided in Rule 43.01(c)…." Rule 43.01(c) allows service to be made upon a party's attorney "[b]y electronic mail." On August 30, 2021, five days after Nelson served Regions, counsel for Nelson emailed counsel for PJ Cheese that he had registered the judgment with this Court. (Doc. No. 15-3). The Notice of Execution and Writ of Execution were attached to the email. The Court concludes Nelson substantially complied with Missouri's procedural rules for service.

**Effect of the Bankruptcy Proceeding**

PJ Cheese informed the Court that Nelson filed for chapter 7 bankruptcy on July 12, 2018. *See In Re Nelson* 18-41615-PWB (Bankr. N.D. Ga). Nelson's claim against PJ Cheese was for unpaid wages for the period between February 20, 2017 and January 19, 2019. (Doc. No. 1-3 at 3). 72 of the 100 weeks for which Nelson claims PJ Cheese underpaid him were prior to his filing for bankruptcy.

PJ Cheese argues that if the underlying claim "is an asset of the bankrupt estate, Nelson's status as a creditor or [sic] PJ Cheese is lessened or void. In either event, the Writ of Execution and Pay-in-Order should be withdrawn or struck." (Doc. No. 12 at 7).

9

Nelson responds that bankruptcy estoppel cannot be raised here, as PJ Cheese was aware of Nelson's bankruptcy but declined to raise the issue during arbitration.

The Court notes that if Nelson is not the party in interest, the Trustee may be a party in interest under Federal Rule of Civil Procedure 17(a).  As such, dismissal is not warranted at this time.  Moreover, it appears that at a minimum Nelson may be entitled to a portion of the FLSA judgment for the weeks after he filed for bankruptcy.  From the party's filings, the Court cannot determine the extent to which the trustee may have a claim to any of these funds and whether the bankruptcy trustee can or must be joined as a party in interest pursuant to Rule 17(a).

**<u>Amount of Judgment</u>**

Also unclear is the extent to which PJ Cheese challenges the amount of the judgment.  In its motion, PJ Cheese notes that the judgment from *Nelson I* contains only the costs and fees association with the confirmation proceeding.  Elsewhere it its motion, however, PJ Cheese asserts, "Assuming for the sake of discussion or argument that the Judgment includes by implication the amount reflected in the Order ($164,264.28), the total "Judgment" entered on June 18, 2021 would be in the amount of 4169,859.28 ($5,595.00 + $164,264.28 = $169.859.28) with federal judgment interest accruing from June 18, 2021 at the federal judgment interest rate." (Doc. No. 12, at 4).  Nelson did not respond to this argument.  The record here leaves little doubt that the district judge directed entry of a judgment in the amount of the arbitration award, plus the attorney's

10

fees and costs associated with the confirmation proceeding. Thus, if the judgment is deficient, it is a result of a clerical error.

Pursuant to Fed. R. Civ. P. 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment…." However, the law is unclear as to whether a court may correct a judgment registered with it pursuant to Rule 69. The Eighth Circuit recognized, but declined to answer, this question in *Stanford v. Utley*: "Does the registration court have power, under Rule 60, F.R.Civ.P., to correct the registered judgment? ... We do not now go so far as to say that registration effects a new judgment in the registration court for every conceivable purpose; neither do we say that it fails to do so for any particular purpose." 341 F.2d 265, 271 (8th Cir. 1965).

The Court concludes that a hearing is appropriate to address the effect of the bankruptcy proceeding, the amount of the judgment at issue, and whether this Court can reform the judgment to correct any error.[4] In the meantime, the parties may wish to seek relief in the Georgia court. *See U. S. for Use & Benefit of Mosher Steel Co. v. Fluor Corp.*, 436 F.2d 383, 384–85 (2d Cir. 1970) ("The powers of a district court to grant relief against a judgment registered there under 28 U.S.C. § 1963 have not been comprehensively delineated. That it may grant relief in certain circumstances seems

---

[4] PJ Cheese also challenges the authority of the arbitrator to award pre- and post-judgment interest. But the time to challenge an award of these amounts was during the confirmation proceeding in the Georgia district court, and PJ Cheese did not do so.

11

clear. Few would argue, however, that the court of registration lacks discretion in appropriate circumstances to refer the parties to the court which rendered judgment.") (internal citations omitted).

Accordingly,

**IT IS HEREBY ORDERED** that a hearing on this matter shall be held on **Thursday, December 16, 2021** at **1:30 P.M.** by **Zoom**. Participants are directed to use the following Zoom log in information: Meeting ID: 161 444 0464; Password: 973200. All participants are directed to add their name (right click and select Rename) to their profile upon entering the Zoom hearing. Pursuant to Local Rule 13.02, all means of photographing, recording, broadcasting, and televising are prohibited in any courtroom, and in areas adjacent to any courtroom, except when authorized by the presiding judge. This includes proceedings ordered by the Court to be conducted by phone or video.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions is **DENIED** as moot. (Doc. No. 10).

**IT IS FURTHER ORDERED** that Plaintiff Allyn Nelson shall serve notice of the hearing on the bankruptcy trustee.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of November 2021.